## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JENNIFER V.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Case No. 20-CV-654-CDL** |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **Acting Commissioner of the** | ) |
| **Social Security Administration,**[1] | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

Plaintiff seeks judicial review under 42 U.S.C. § 405(g) of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. For the reasons set forth below, the Commissioner's decision is **affirmed**.

### I.     Standard of Review

The Social Security Act (Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

---

[1]      Pursuant to Federal Rule of Civil Procedure 25(d)(1), Kilolo Kijakazi is substituted as the defendant in this action, effective upon her appointment as Acting Commissioner of Social Security in July 2021. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See id*. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S.Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II.   Procedural History

On May 31, 2019, Plaintiff applied for disability benefits under Title II and Title XVI of the Act, alleging a disability onset date of April 11, 2003. (R. 12). Plaintiff later amended her alleged onset date to May 31, 2019 and voluntarily dismissed her Title II claim. (R. 13). Plaintiff was 45 years old on the amended alleged disability onset date.

Plaintiff alleged disability due to bipolar disorder, depression, anxiety, post-traumatic stress disorder (PTSD), migraines, and restless leg syndrome. (R. 71).

Plaintiff's claim was denied initially on August 14, 2019 and denied on reconsideration on November 15, 2019. (R. 12). Plaintiff then requested a hearing before an Administrative Law Judge (ALJ). The ALJ held a hearing on June 18, 2020, at which Plaintiff was represented by counsel, and a vocational expert (VE) provided testimony. *Id*. The ALJ denied benefits in a decision dated July 27, 2020. (R. 9-30).  On October 26, 2020, the Appeals Council denied Plaintiff's request for review. (R. 1). As a result, the ALJ's decision became the final decision of the Commissioner. *Id*. Plaintiff then timely appealed to the district court. Accordingly, the Court has jurisdiction to review the ALJ's July 27, 2020 decision under 42 U.S.C. § 405(g).

## III.   The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams*, 844 F.2d at 751 (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). At step four, the claimant must show that her impairment or combination of impairments

prevents her from performing her previous work. The claimant bears the burden on steps one through four. *Lax*, 489 F.3d at 1084. If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. *Id*.

Here, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since May 31, 2019, the amended alleged onset date. (R. 15). At step two, the ALJ found that Plaintiff suffers from severe impairments of bipolar I disorder, intermittent explosive disorder, PTSD, obesity, and migraine headaches. *Id*.

At step three, the ALJ determined that Plaintiff's impairments do not meet or medically equal a Listing. The ALJ discussed the "paragraph B" criteria—four areas of mental functioning used to determine whether a claimant's mental impairments functionally equal a Listing. (R. 14); *see* 20 C.F.R. § 404 Subpt. P App'x 1. The ALJ found that Plaintiff has a moderate limitation in each of the four relevant domains— understanding, remembering, and applying information; interacting with others; and concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 17-18). Because Plaintiff does not have at least one extreme or two or more marked limitations, the ALJ found the paragraph B criteria are not satisfied. The ALJ also considered the "paragraph C" criteria (for "serious and persistent mental disorders," *see* Listing 12.00A(2)(c)) and determined that they are not present. (R. 18).

At step four, the ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform

medium work as defined in 20 CFR 416.967(c) except as follows: The claimant is able to understand, remember, and carry out simple tasks with simple instructions in a routine work setting, meaning [a specific vocational preparation (SVP) level] of 1 to 2. She is capable of occasional interaction with coworkers and supervisors. She should have no interaction with the general public, although contact would be ok. She should perform no tandem or teamwork. [Plaintiff] is able to handle occasional changes in work processes. She should not be exposed to extreme heat, which is defined as above ninety degrees. Finally, she will be off task ten percent of the workday and will miss work one day a month.

*Id*. Because Plaintiff has no past relevant work, the ALJ proceeded to step five. *Id*.

The VE testified that an individual with the same RFC could perform the requirements of representative occupations including:

- **Machine Packager**, medium-exertion work, SVP level 2, with 177,000 such jobs existing in the national economy, DOT # 920.684-078;

- **Hospital Cleaner**, medium-exertion work, SVP level 2, with 1,000,000 such jobs existing in the national economy, DOT # 323.687-010; and

- **Warehouse Worker**, medium-exertion work, SVP level 2, with 157,500 such jobs in the national economy, DOT # 922.687-185.

(*See* R. 25-26). Citing the VE's testimony, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 26). Accordingly, the ALJ found Plaintiff not disabled at step five. *Id*.

## IV.   Discussion

Plaintiff argues that the ALJ (1) failed to properly evaluate Plaintiff's subjective statements, (2) improperly discounted the mental health treating source opinion, (3) assessed an RFC determination unsupported by substantial evidence, and (4) failed to support her step-five findings with adequate evidence. The Commissioner contends that

the ALJ applied the proper legal standards and that substantial evidence supports the ALJ's decision.

### A.    Subjective Statements

Plaintiff argues the ALJ erred in evaluating the consistency of her statements regarding her (i) migraine headaches and (ii) social limitations. In evaluating a claimant's statements regarding pain or other symptoms, the ALJ "must consider (1) whether [a c]laimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the [c]laimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, [the c]laimant's pain is in fact disabling." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) (internal citation omitted).

> When determining the credibility of pain testimony, the ALJ should consider such factors as "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* at 1489 (internal citations omitted).[2]

---

[2]    The agency no longer uses the term "credibility" to describe the ALJ's analysis of subjective symptoms. *See* Social Security Ruling (SSR) 16-3p, 2017 WL 5180304 (the Commissioner "eliminat[ed] the use of the term 'credibility' from [the] sub-regulatory policy, as [the] regulations do not use this term," and "subjective symptom evaluation is not an examination of an individual's character"). However, the standard of review of the ALJ's consistency analysis is the same as when the agency used the term "credibility." *See, e.g., Zhu v. Comm'r, SSA*, --- F. App'x ---, 2021 WL 2794533, *5, n.7 (10th Cir. Jul. 6, 2021).

The ALJ must explain "the link between the evidence and credibility determination." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). Under agency regulations, the ALJ's decision must give "specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the [ALJ] evaluated the individual's symptoms." SSR 16-3p. However, "[c]redibility determinations are peculiarly the province of the finder of fact"—that is, the ALJ, not the court. *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (citing *Kepler*, 68 F.3d at 391). "So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000); *see also* SSR 16-3p, 2016 WL 1237954.

### 1. Migraines

Plaintiff testified to experiencing debilitating migraine headaches three to four days per week, lasting a few hours to a few days. (R. 19). The ALJ's decision acknowledged this testimony. *Id*. The ALJ determined Plaintiff's migraine headaches constitute a severe impairment and warranted restrictions in the RFC determination. (*See* R. 18, 21). Thus, the ALJ satisfied the first two steps under *Thompson*.

The ALJ limited Plaintiff to medium-exertion work, despite examinations finding Plaintiff had normal motor strength and normal movement of all extremities, due in part to her migraine headaches. (*See* R. 22). The ALJ determined that Plaintiff's migraines warranted additional limitations in the RFC, including that Plaintiff would be off-task ten percent of the workday, would miss one workday per month, and should not be exposed to

"extreme heat," defined as heat above 90 degrees. (*See* R. 19, 23). However, the ALJ found that Plaintiff's statements regarding her migraine symptoms were not entirely consistent with other evidence in the record. (R. 18-19).

The ALJ discussed relevant evidence and provided reasons for this determination. First, the ALJ noted that Plaintiff's medical records "do not show a pattern of frequent treatment for intractable headaches." (R. 22; *see also* R. 19 (citing Exs. 4F and 9F) (noting absence of "frequent pattern of treatment for specific migraine headaches lasting more than a day" in Plaintiff's primary care records). Plaintiff objects that the ALJ may not properly discount her allegations simply because the treatment "did not match what the ALJ thought was appropriate." (Pl.'s Br., Doc. 14 at 5). But the "extensiveness of [a claimant's] attempts to obtain . . . relief" is among the factors the ALJ should consider in evaluating a claimant's subjective statements. *Thompson*, 987 F.2d at 1489. Similarly, the ALJ properly considered Plaintiff's use of medications to treat her migraine symptoms and the frequency of medical contacts relating to migraines. *See id*.

Plaintiff does not dispute that the record lacks evidence of frequent treatment for prolonged migraines. (*See* Doc. 14 at 5). Additionally, the ALJ's decision reflects that she considered the existing evidence. In April 2019, Plaintiff complained of light sensitivity and twice-weekly migraines lasting up to 18 hours, and she was prescribed two medications. (R. 20, 615-616). However, in July 2019, Plaintiff's doctor assessed her headaches as "not intractable" and "without status migrainosus" (i.e., not lasting longer than 72 hours). (R. 20, 756-757). The ALJ also noted Plaintiff's testimony that she takes medications after a migraine starts, but does not take a preventative medication, because

she has not found one that worked. (R. 19). Additionally, the state agency reviewing physicians, Mohamed Kanaa, M.D. and Wyatt Rousseau, M.D., opined that Plaintiff could perform medium-exertion work, with no environmental limitations regarding her migraines. (*See* R. 23).

Plaintiff argues that her headaches impose greater limitations than those assessed by the ALJ, and would preclude substantial gainful activity. However, the ALJ supported her conclusion with analysis of the proper factors and reference to specific evidence in the record. *Qualls v. Apfel*, 206 F.3d at 1372. Nothing more was required. *See Keyes-Zachary v. Astrue*, 695 F.3d at 1169 (10th Cir. 2012) (finding ALJ's discussion adequate where he "listed many of [the claimant's] specific factual assertions, often following them by a qualifying statement to indicate where he believed her testimony was contradicted or limited by other evidence in the record"); *see also Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997) (a claimant has the burden to prove that her impairments "significantly limit[ed]" her ability to perform "basic work activity").

### 2.    Social Interaction

The ALJ included social interaction limitations in the RFC determination to address symptoms of Plaintiff's bipolar I disorder, intermittent explosive disorder, and PTSD. (*See* R. 15, 18). As noted *supra* Part III, the RFC is restricted to occasional interaction with coworkers and supervisors, contact but no interaction with the general public, and no tandem or teamwork. (R. 18). Nonetheless, Plaintiff contends that the ALJ improperly discounted her allegations that she rarely leaves her house, becomes nervous around other people, has very limited social contact, and has had verbal altercations with others due to

difficulty managing her anger. (Doc. 14 at 6-8). For example, Plaintiff testified that being around other people makes her "very nervous," and that she has difficulty managing her anger. (R. 55).

The ALJ acknowledged Plaintiff's testimony about her mental health symptoms and cited substantial evidence supporting the social-interactive limitations included in the RFC determination. (*See* R. 19 (noting Plaintiff tries to avoid other people and "testified she does not get along well with others because of her angry outbursts; she described herself as very confrontational," but also "said her medications are helpful"); R. 20-21 (discussing Plaintiff's therapy records)). However, a claimant's subjective complaints of symptoms, alone, are not sufficient to establish disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.929.

The ALJ's decision includes details from ten of Plaintiff's visits with mental health providers between April 2019 and March 2020. (R. 19-22). As the ALJ acknowledged, on several of these occasions, Plaintiff appeared irritable, reported experiencing anger around other people, and reported not wanting to leave her house. However, in many of the same visits, Plaintiff was noted to be attentive, oriented, and well-groomed. (R. 20-21). Her attention was "excellent" on at least three occasions. *Id*. Plaintiff also reported to her providers that medications were helping with some of her symptoms, including depression, anxiety, and anger. (R. 20). In other instances, Plaintiff reported that she had not taken prescribed medication. *See id*. At various times, Plaintiff also indicated that her mental symptoms related to stressful circumstances in her life. (R. 20-21). The ALJ noted that on February 18, 2020, Plaintiff's presented with irritable mood, blunted affect, poor eye

contact, and unkempt hygiene. (R. 21). However, Plaintiff was oriented, dressed appropriately, showed linear thought process, and was able to develop and express coping skills she could use on an upcoming trip. (R. 21-22).

An outpatient behavior health assessment completed by Mr. Cordero on March 25, 2020 noted diagnoses of bipolar I disorder, intermittent explosive disorder, and PTSD, and noted that Plaintiff had reported experiencing daily depression, isolation, anger, not showering, staying in bed, and having feelings of worthlessness and hopelessness. (R. 22). However, while Plaintiff stated that she had no relationship with her parents, and had problems maintaining relationships due to past abuse, she stated that she had a good relationship with three of her four children. *Id*.  Mr. Cordero assessed a "poor" prognosis and recommended continued therapy and medication management. *Id*. Yet, as the ALJ further noted, while Plaintiff "has a history of arguing with clinic staff, the record does not include incidents of physical violence." (R. 25 (citing mental health treatment records at Exs. 5F, 6F, and 8F).

Accordingly, consistent with *Kepler*, the ALJ set forth specific evidence she relied upon in finding Plaintiff's mental impairments are not as limiting as alleged. Nothing more was required.

### B.    **Mallgren/Cordero Opinion**

Plaintiff contends the ALJ committed reversible error in finding the opinion of Weldon Mallgren, M.D., Kris Cordero, LPC-C, was not persuasive. An ALJ must articulate how she considered the medical opinions or prior administrative medical findings from each medical source, 20 C.F.R. § 404.1520c(b)(1). For claims, such as this one, filed on or

after March 27, 2017, the Commissioner does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinions." 20 C.F.R. § 404.1520c(a). Rather, the ALJ must consider the relevant factors in determining the persuasiveness of a medical source's opinion, and the most important factors for the ALJ to consider are supportability and consistency. *Id*. § 416.920c(b)(2).[3]

Evidence in the record shows that Plaintiff received mental health treatment in 2019 and 2020 at Grand Lake Mental Health Center from Dr. Mallgren, Mr. Cordero, LPC-C, and other providers with the same clinic.[4] Dr. Mallgren and Mr. Cordero signed a medical source statement (MSS) dated April 24, 2020. (R. 768-770). The MSS noted that Plaintiff had diagnoses of Bipolar I disorder and PTSD. (R. 24). It also noted that Plaintiff "had blown up at staff under minimal stress and had negative altercations with another consumer in the lobby." *Id*.

The checkbox-style MSS indicated that Plaintiff had "marked" limitations in each listed area. (R. 768-770). As noted in the ALJ's decision, the areas designated as "marked" limitations encompass "all areas of understanding and memory, attention and concentration, and . . . social interaction." (R. 24). Dr. Mallgren and Mr. Cordero also responded to a single-question questionnaire from Plaintiff's counsel, dated June 3, 2020,

---

[3]    The ALJ must also consider the medical source's relationship with the claimant, specialization, and other factors, but the ALJ's decision is not required to specifically address those additional factors. *Id*. § 416.920c(c).

[4]    The ALJ determined that Plaintiff primarily saw Mr. Cordero, noting Plaintiff testified that she did not know whether she had ever seen Dr. Mallgren. (R. 24).

in which they indicated that Plaintiff would be unable "100% of the 8-hour workday" to perform the mental activities designated as "marked" on the earlier MSS. (R. 775).

The ALJ found that the opinion of Dr. Mallgren and Mr. Cordero is not persuasive because, "while the treatment records included mental status examinations with findings of anger and hostility, there are not findings of deficiencies in memory or concentration so severe and frequent as to support marked limitations in all the areas listed in Dr. Mallgren and LPC Cordero's opinion." (R. 24). Moreover, "while [Plaintiff] has a history of arguing with clinic staff, the record does not include incidents of physical violence; further, [Plaintiff] has reported medications have helped with her anger." (R. 25; *see also* R. 24 (treatment records noting that medications were helping).

Accordingly, the ALJ found the opinion of Dr. Mallgren and Mr. Cordero "is not consistent with or supported by the treatment record." (R. 24). Instead, the ALJ found that the social limitations included in the RFC determination were adequate to address Plaintiff's mental impairments. *See id.* Those limitations include (1) only occasional interaction with coworkers and supervisors, (2) no interaction with the general public, although the work may include contact with the public, (3) no tandem or teamwork. (R. 18).

The ALJ's explanation for finding the MSS unpersuasive is reasonable. The ALJ explained that Dr. Mallgren's and Mr. Cordero's opinion was not consistent with their own treatment records and that the record does not support the extreme limitations indicated on the MSS. Plaintiff's providers checked the box for a "marked" limitation in every available instance on the MSS form. (*See* R. 768-770). The areas designated as "marked" include

the ability to understand and remember simple instructions, maintain attention and concentration for extended periods in order to perform simple tasks, and maintain socially appropriate behavior and standard of neatness and cleanliness. (R. 768-770). The form explains that a marked limitation means the "individual cannot usefully perform or sustain the activity." (R. 768).

Plaintiff argues that the evidence showed that when she was angry, her attention was only fair. However, as the ALJ's decision noted, during the relevant time period, Plaintiff attended some therapy sessions where her attention span was good or even "excellent"; her immediate, short-term, and long-term memory were noted as good or fair; and she "was capable of good, fair, or intermittent eye contact at times." (R. 17 (citing exhibits); R. 20-22 (discussing treatment records)). She generally demonstrated adequate or better grooming and was appropriately dressed. (R. 18 (citing exhibits); R. 20-22). Furthermore, the ALJ noted several instances when Plaintiff stated that medications were helping with her anger. (R. 17, 19, 24, 25). Thus, the ALJ reasonably concluded that the MSS is not persuasive. *Simmons v. Colvin*, 635 F. App'x 512, 515–16 (10th Cir. 2015) (an ALJ properly rejects an opinion when the medical source's impairment ratings on forms are more extreme than their own treatment notes suggest).

Additionally, the opinions of state agency reviewing consultants, Cynthia Kampschaefer, Ph.D. and Bruce Lochner, Ph.D., support the RFC determination. They determined that Plaintiff is "able to relate to supervisors on a superficial work basis" and "not able to relate to the general public." (R. 81, 101). The ALJ explained that the state agency psychiatric opinions were persuasive, but additional limitations were included in

the RFC determination based on medical and mental health records not available to the agency reviewers. (R. 23 (explaining that "superficial" was not included in the RFC because it is not a vocationally defined term)). Thus, substantial evidence supports the social-interaction limitations in the RFC.

Plaintiff contends that the ALJ ignored certain other medical evidence. The ALJ is not required to discuss every piece of evidence in the record; rather, the ALJ must discuss the uncontroverted evidence she chooses not to rely upon, as well as significantly probative evidence she rejects. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Plaintiff points to a Client Assessment Record (CAR), dated April 4, 2019, assessing severe problems in areas including feeling/mood/affect, thinking/mental process, and interpersonal issues. (R. 629-636). The CAR relates Plaintiff's statements that she had severe difficulties with controlling her emotions, short-term memory, and interpersonal relationships, among other symptoms. (*See* R. 629).

Under the applicable regulations, CAR evidence is not a medical opinion. Medical opinions are defined as "statement[s] from a medical source about what [the claimant] can still do despite [their] impairment(s). . . ." 20 C.F.R. § 416.913(a)(2). Rather, CAR scores are considered "[o]ther medical evidence," i.e., "judgments about the nature and severity" of a patient's impairments. 20 C.F.R. § 416.913(a)(3). As such, the ALJ was not required to articulate the persuasiveness of this evidence. 20 C.F.R. § 416.920c(b).

The ALJ's decision noted "treatment records contain[ing] reports of events when [Plaintiff] became angry," reports by Plaintiff that "she said whatever was on her mind, and not everyone liked that," she "argued with clerical staff regarding a canceled

appointment and she expressed wanting to 'reach across there and punch' . . . staff in the face." (R. 17; *see also id.* (citing R. 629) (discussing notation of impaired recent and poor immediate recall)). The focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. *See Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition."). In this context, Plaintiff has failed to show that a more-detailed discussion of the CAR evidence was needed. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

Plaintiff also cites Global Assessment of Functioning (GAF) scores from her treatment record at the Grand Lake clinic. The GAF scores that Plaintiff cites appear on paperwork for insurance authorization for treatment. (R. 632-636 (score of 41); R. 722 (score of 40)). The ALJ's failure to discuss the GAF score does not constitute reversible error in itself. In an unpublished opinion, the Tenth Circuit has noted that, "[w]hile a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy." *Lopez v. Barnhart*, 78 F. App'x 675, 678 (10th Cir. 2003) (quoting *Howard v. Comm'r of Soc. Sec.* 276 F.3d 235, 241 (6th Cir.2002) (an "ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate").

Plaintiff contends the GAF scores are consistent with, and therefore support, the MSS completed by Dr. Mallgren and Mr. Cordero. The Court notes that GAF scores of 40

and 41 may indicate significant limitations in one or more areas of mental functioning. *See Lopez*, 78 F.3d at 677-78 (citing American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders 32-34 (Text Rev. 4th ed. 2000) (noting that a GAF of 31–40 indicates "[s]ome impairment in reality testing or communication . . . OR major impairment in several areas, such as work . . . , family relations, [or] judgment," while a GAF of 41–50 indicates "[s]erious symptoms . . . OR any serious impairment in social or occupational . . . functioning"). Additionally, the Tenth Circuit has held that such scores, "though not determinative of a claimant's ability to work, are relevant to an ALJ's determination of whether a medical opinion is consistent with the medical record." *Guice v. Comm'r, SSA*, 785 F. App'x 565, n.5 (10th Cir. 2019).

Accordingly, an explicit acknowledgment of the GAF scores would have been desirable in the interest of thoroughness. However, while the ALJ was required to consider these scores, "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision." *Id*. (quoting SSR 06–03p, 2006 WL 2329939 at *6 (rescinded on other grounds)). The ALJ's decision need not be remanded on this basis. *See Luttrell v. Astrue*, 453 F. App'x 786 (10th Cir. 2011) ("While it may have been preferable for the ALJ to have specifically recited why he chose to disregard the GAF scores, it is enough that "the discussion of the evidence in the . . . decision allows a . . . subsequent reviewer to follow the [ALJ's] reasoning.").

Here, based on the Court's review of the record as a whole, discussion of the GAF scores would have added little, if any, value to the ALJ's analysis. The GAF scores appear with little context or explanation. (*See* R. 634, 722). Moreover, these scores accompany

treatment notes that include substantial evidence supporting the RFC determination, as discussed above. The ALJ's decision reflects a thorough consideration of the record as a whole, including Plaintiff's mental health treatment by Dr. Mallgren and Mr. Cordero. (*See* R. 16-24). In this context, where the ALJ referenced the same set of treatment records extensively throughout her decision, the ALJ's failure to note Plaintiff's GAF scores was not reversible error. *Id.*

The ALJ's decision reasonably explained her reasons for rejecting the MSS and opinion of Dr. Mallgren and Mr. Cordero. The fact that a different adjudicator might have weighed the evidence differently is not a basis for reversal, because the responsibility for determining the weight of the evidence rests with the ALJ. Where substantial evidence supports the ALJ's decision, as it does here, the Court may not re-weigh the evidence. *See Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007) (on appeal, court reviews only sufficiency of evidence, not its weight); *Lax*, 489 F.3d at 1084 (court may not reweigh evidence and displace agency choice between two fairly conflicting views).

### C.     Time Off-Task

Plaintiff argues that the RFC condition that she would be off-task for ten percent of a workday, due to her migraine headaches, lacks substantial supporting evidence in the record. First, she contends that the ten-percent allowance is not consistent with her symptoms, to the extent that it would allow her to be off-task for only six minutes out of each hour. Second, she argues that, if she required a single break consisting of ten percent of a workday (i.e., 48 minutes in an eight-hour workday), competitive employment would be precluded.

The RFC is an administrative finding within the sole purview of the ALJ. *See* 20 C.F.R. § 404.1546(c) (ALJ is responsible for assessing RFC); *Young v. Barnhart*, 146 F. App'x 952, 955 (10th Cir. 2005) (unpublished) ("The determination of RFC is an administrative assessment, based upon all the evidence of how the claimant's impairments and related symptoms affect her ability to perform work-related activities . . . . The final responsibility for determining RFC rests with the Commissioner, based upon all the evidence in the record, not only the relevant medical evidence."). In order to survive judicial review, the ALJ's RFC findings need only be legally sound and supported by substantial evidence—a threshold that is "not high." *Biestek*, 139 S. Ct. at 1154.

Here, the time-off-task limitation was reasonable given the evidence of record. For example, the ALJ's decision explained that Plaintiff started taking a medication for migraines but stopped the medication shortly thereafter. (R. 16). As noted *supra* Part IV.A, Plaintiff's medical records did not show a pattern of frequent treatment for long-lasting headaches, a physician noted that her headaches were "not intractable," and Plaintiff testified that she does not take any preventive medication for migraines. Additionally, the state agency reviewing physicians, Dr. Kanaa and Dr. Rousseau, did not include any time-off-task limitation in their opinions that Plaintiff can perform medium-exertion work. *See* 20 C.F.R. § 404.1513a(b)(1) (state agency psychologist are "highly qualified experts in Social Security disability evaluation").

Accordingly, substantial evidence supports the ALJ's finding that Plaintiff has the RFC with an allowance for ten percent time-off-task. The Court cannot properly disturb this finding. Furthermore, the ALJ was not required to specify whether the ten-percent

allowance for time-off-task would be taken in six-minute increments, a single 48-minute increment, or otherwise. As the ALJ's decision explained, the "Selected Characteristics of Occupations do[es] not address time off task, absences, extreme heat, frequency of interaction with others, and tandem or team work; therefore, for these limitations, the [VE] testified that she based her opinion on her twenty-five years of experience as a vocational counselor." (R. 26, 64-65). The ALJ appropriately accepted the VE's testimony "based on her expertise and experience" as to the limitations not addressed in the DOT and SCO. (R. 26). *See* SSR 00-4P, 2000 WL 1898704, at *3 (Dec. 4, 2000) ("Information about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a VE's . . . experience in job placement or career counseling.").

### D.    Step Five

Plaintiff argues that the ALJ failed to adequately support her findings at step five. After eliciting testimony from the VE in response to the operative hypothetical, the ALJ further questioned the VE regarding additional limitations in connection with Plaintiff's migraines. Specifically, the ALJ inquired (i) how much an individual could be "off task" and still maintain employment, and (ii) how often an individual could miss work and maintain employment. The VE provided testimony as to the maximum tolerance for each of these conditions.

However, Plaintiff objects that the VE did not testify as to the jobs available to an individual with *both* allowances in combination—i.e., ten percent off-task *and* one absence per month. In order for the VE's testimony to constitute substantial evidence at step five,

the hypothetical question must relate with precision all of a claimant's impairments. *See Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991). Here, the relevant hearing testimony is as follows:

> Q: So, I know typically to do work, an individual needs to concentrate and attend for two-hour segments. If an individual is able to concentrate and attend for only one-hour segments, is that work[-]preclusive?
>
> A [by VE]: Yes.
>
> Q: How much can an individual be off task and still work, in your opinion?
>
> A: Fifteen percent. Anything greater on a regular basis would preclude employment.
>
> Q: And how much can someone miss work and still work?
>
> A: Particularly in unskilled work, one day a month. If one is consistently absent more than that, they would not be able to maintain competitive employment.
>
> . . .
>
> Q: And what did you base your opinion in these areas on?
>
> A: My 25 years' experience as a vocational counselor.

(R. 64).

Notably, this discussion immediately followed the VE's testimony that an individual with Plaintiff's RFC (in all other respects) could perform jobs such as hospital cleaner, machine packager, and warehouse worker. (R. 62-63). The VE gave no indication that either of these additional allowances—either individually or in combination—would affect her earlier answers to the ALJ's hypothetical questions. To the contrary, the order of the VE's responses indicates that her earlier testimony stands, as long as allowances for

time off-task and absences do not exceed the maximum parameters she identified. As such, the ALJ appropriately relied on the VE's testimony to support the alternative work findings at step five.

Plaintiff suggests that the combination of the two conditions in the RFC might preclude all work. However, this contention is mere speculation, and neither the VE's statements nor common sense supports it. *See Sanders*, 556 U.S. at 409-10 ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *Keyes-Zachary*, 695 F.3d at 1166 (a court reviewing an ALJ's decision under § 405(g) "should, indeed must, exercise common sense. . . . [W]e cannot insist on technical perfection."); *see also Moua v. Colvin*, 541 F. App'x 794, 798 (10th Cir. 2013) (citation omitted) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). Accordingly, the Court finds no need to remand this case for further development of the VE's testimony.

## V.   Conclusion

The undersigned finds the ALJ's decision is supported by substantial evidence and that the ALJ applied the correct legal standards. Accordingly, the decision of the Commissioner finding Plaintiff not disabled is **affirmed**.

ORDERED this 22nd day of March, 2022.

Christine D. Little
United States Magistrate Judge